United States District Court
District of Massachusetts

| | |
|---|---|
| Steven Bruno,                          )<br>                                        )<br>        Plaintiff,                     )<br>                                        )<br>        v.                              )<br>                                        )<br>Carolyn W. Colvin,                      )<br>                                        )<br>        Defendant.                      )<br>                                        ) | Civil Action No.<br>16-10794-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Steven Bruno ("Bruno" or "petitioner") filed this action appealing the denial of his application for disability benefits against Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner" or "respondent"). He claims he was improperly denied Disability Insurance Benefits because the decision of the presiding Administrative Law Judge ("ALJ") was erroneous and not supported by substantial evidence.

Pending before the Court are petitioner's motion for judgment on the pleadings to reverse the Commissioner's decision, petitioner's renewed motion for judgment on the pleadings to reverse the Commissioner's decision and respondent's motion for an order affirming her decision. For the reasons that follow, petitioner's motions to reverse the

-1-

Commissioner's decision will be denied and the Commissioner's motion to affirm will be allowed.

I.  **Background**

   A.  **Employment History and Alleged Disability**

Bruno was 50 years old on his alleged "onset" date of June 1, 2008.  He alleges disability due to blindness in his right eye, osteoarthritis in his left hip, a dislocated shoulder and a partially herniated disc in his lumbar spine.  Bruno has employment experience as an equipment salesperson, inside salesperson and telephone solicitor.  He was laid off from work in May, 2008.

Bruno has been treated for complex retinal detachment since 2005, which has led to the permanent loss of vision in his right eye.  In January, 2011, Michael B. Raizman, M.D. noted that Bruno's left eye was healthy but that he needed to wear glasses.  Bruno has testified that the acuity and depth perception in his left eye are gone and that he has floaters in his left eye that appear to be an impending posterior vitreous detachment.  He was also diagnosed with cataracts in his left eye.

Starting in 2009, Bruno visited Lawrence M. Specht, M.D. with complaints of left anterior hip pain with activities and some radiculopathy to this left foot.  X-rays of his left hip revealed degenerative disc disease bilaterally in the hip

joints.  Bruno continued to complain of hip pain during doctor visits in 2011 and 2012, but stated that he did not want to pursue total hip arthroplasty.  In March, 2014, an x-ray of Bruno's left hip showed extensive degenerative changes in the left femoral head and slight degenerative changes in the right femoral head.

In May, 2011, Bruno suffered a left AC shoulder joint separation. A few months later on examination, he had near-full active range of motion of that shoulder.

Bruno asserts that because of his physical health problems as of June 1, 2008, he could no longer work and his disability extended to December 31, 2013, the date last insured.

**B.  Procedural Background**

On May 19, 2010, Bruno filed an application for Disability Insurance Benefits under Title XVI of the Social Security Act ("the Act") in which he alleges that he is disabled because of the ailments described above.  On March 4, 2011, the Commissioner denied his claim and the following June his claim was denied again after reconsideration.

Bruno filed a request for a hearing on April 18, 2012.  A hearing was held before ALJ Paul M. Murphy.  Bruno was represented by counsel.  The ALJ found that Bruno was not disabled as defined by 42 U.S.C. § 1381 of the Act as of his date last insured.  Bruno filed a timely request for review with

the Appeals Council.  He claimed that the ALJ's decision was flawed because it disregarded the left shoulder impairment, was inadequate regarding the left hip surgery and was unclear about whether Bruno's residual functional capacity ("RFC") would allow him to return to past relevant work using the computer "constantly".

On June 13, 2013, the Appeals Council remanded the case to the ALJ for a new hearing and decision.  In its remand order, the Appeals Council directed the ALJ to consider further Bruno's alleged left shoulder impairment given new and material evidence, as well as to clarify the testimony of the vocational expert ("VE") regarding Bruno's ability to return to past relevant work as generally performed given his RFC.  A supplemental hearing was held on October 15, 2014, by ALJ William Ramsey at which an impartial VE and Bruno, represented by counsel, both appeared and testified.  On November 7, 2014, the ALJ issued a decision finding that Bruno was not disabled as defined by 42 U.S.C. § 1381 of the Act.

### C. Legal Standard

To obtain benefits under § 1602 of the Act, an individual must demonstrate that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

The impairment must be of such severity that the claimant is not only unable to continue his previous work but also unable to engage in other kinds of substantial work that exist in the national economy fitting his age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether an individual is disabled, the ALJ determines whether

> 1) the claimant is engaged in "substantial gainful activity", 2) the claimant has a severe physical or mental impairment, 3) that impairment is equivalent to an impairment enumerated in the regulations, 4) the claimant's RFC meets the requirements of his previous work and 5) there are jobs that would be appropriate for the claimant given her RFC, age, education and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Furthermore, the ALJ must determine whether claimant met the insured status requirements of 42 U.S.C. §§ 416(i) and 423. Bruno's earning records showed that he acquired sufficient quarters of coverage to remain insured through December 31, 2013. Therefore, Bruno had to establish disability on or before the date last insured in order to be entitled to a period of disability and disability insurance benefits. See 42 U.S.C. §§ 423 (a)(A) & (c)(1).

-5-

**D. The ALJ's Decision**

The ALJ found that Bruno was not entitled to disability insurance benefits and had not established disability. The decision was supported by written evidence and testimony from Bruno, medical professionals and an impartial VE.

At step one, the ALJ found that Bruno did not engage in "substantial gainful activity" during the period from his alleged onset date of June 1, 2008 through his date last insured of December 31, 2013. At step two, the ALJ found that through the date last insured, the claimant had the following severe impairments: 1) loss of vision in the right eye, 2) cataract in the left eye, 3) left shoulder separation, 4) degenerative disc disease, 5) left hip disorder and 6) obesity. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 of 20 C.F.R. § 404 Subpart P.

At step four, where the ALJ determines whether a claimant's RFC meets the requirements of his previous work, the ALJ concluded that Bruno had the RFC to perform "light work", as defined in 20 C.F.R. § 404.1567(b), with exceptions. Bruno could lift 20 pounds occasionally and 10 pounds frequently with his right upper extremity and 10 pounds occasionally and less than 10 pounds frequently with his left upper extremity.

Additionally, Bruno could stand or walk at least two hours in an eight hour workday, sit about six hours in an eight hour workday, climb or balance, stoop, kneel, crawl, occasionally push or pull with his left upper extremity and left lower extremity and occasionally reach overhead with his left upper extremity. Due to his limitations, Bruno was to avoid concentrated exposure to all hazards and exercise a sit or stand option allowing him to alternate every 30 minutes.

The ALJ then proceeded to step five of the analysis in which he concluded that Bruno was capable of performing past relevant work as an equipment salesperson, an inside salesperson or telephone solicitor. Such work did not require performance of work-related activities precluded by Bruno's RFC. The ALJ's conclusion was supported by the testimony of the VE. Due to Bruno's ability to return to past relevant work, the ALJ found that Bruno was not under a disability, as defined in the Act, at any time from the alleged onset date to the date last insured. The Appeals Council denied Bruno's request for review of the ALJ's decision.

Petitioner filed a complaint with this Court in April, 2016, and the motions described in the Introduction above have been pending since September, 2016, and February and October, 2017, respectively.

## II. Social Security Disability Insurance Appeal

### A. Legal Standard

The Act gives United States District Courts the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the District Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

### B. Application

Bruno claims that the ALJ erred in denying his claim for benefits because: 1) in light of new material evidence, the ALJ did not apply heightened scrutiny to negative credibility determinations, 2) Bruno's assigned RFC would prevent his returning to past relevant work and 3) there are no jobs that

Bruno can perform without further injuring his remaining eyesight.

The Commissioner responds that the ALJ properly followed the Appeals Council Remand Order and that Bruno failed to demonstrate that the ALJ's determinations were unsupported by substantial evidence.

**1. Negative Credibility Determinations**

Bruno first contends that the ALJ should have applied heightened scrutiny to negative credibility determinations on remand. Bruno was not able to pay for the prerequisite dental work needed for him to be considered for hip surgery and that became a negative credibility finding because Bruno failed to pursue more than conservative treatment for his left hip disorder. He claims heightened scrutiny is the necessary standard of review to assess such a negative credibility determination because additional evidence now corroborates his initial testimony as to the severity of his impairments.

Petitioner points to no law in support of the notion that heightened scrutiny is the standard of review necessary to review the negative credibility determination. When assessing the credibility of a claimant's subjective symptoms, the ALJ must consider

> 1) the individual's daily activities, 2) the location, duration, frequency, and intensity of the individual's pain

or other symptoms, 3) factors that precipitate and aggravate the symptoms, 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms, 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR no. 96-7p; see also 20 C.F.R. § 404.1529(c)(3).

The credibility determination by the ALJ is entitled to deference, especially when supported by specific findings, given his greater familiarity with the proceedings. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Substantial evidence in the record supports the ALJ's credibility determination.

Bruno alleges that his impairments adversely affect his ability to do work more acutely than is estimated by the medical evidence and the record as a whole. Further, Bruno testified that he 1) sleeps four to five hours a night, 2) cannot perform daily chores, 3) has trouble getting up due to stiffness and 4) must elevate his feet throughout the day. The ALJ found that Bruno's statements concerning the intensity, persistence and limiting effects of his impairments were not entirely credible.

The ALJ considered multiple factors in concluding that Bruno's subjective symptoms were not believable. Although Bruno claims that his hip and shoulder impairments restrict him to a

greater degree than medical evidence has established, he has admitted that he regularly rides his bicycle three or four miles at a time and does shoulder exercises at home.  Moreover, despite his visual impairments, the registry of motor vehicles has not restricted his driving.  As of April 2012, Bruno's ophthalmologist indicated that Bruno's left eye has "very good vision with glasses and is healthy overall".

The opinions of Jerry Blaine, M.D. and Robert H. Brew, M.D. submitted by Bruno to corroborate his testimony as to the severity of the impairments were also considered.  The opinions stated that Bruno is "unable to sustain gainful employment as a result of multiple disabilities" and "currently totally disabled."  The ALJ appropriately accorded those opinions little weight because they addressed issues reserved for the Commissioner. See Ormon v. Astrue, 793 F. Supp. 2d 465, 471 (D. Mass. 2011) (noting that the determination of the ultimate question of disability is reserved for the Commissioner).  After weighing such factors, the ALJ concluded that Bruno's alleged limitations are self-imposed restrictions that are not well supported by the medical evidence and are inconsistent with several of his own actions.

This Court must uphold the ALJ's findings where "a reasonable mind, reviewing the evidence in the record as a whole" is able to find that the ALJ's conclusion is adequately

supported by the record. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). There is adequate support in the record for the ALJ's finding that Bruno's subjective symptoms were not credible and this Court will not reverse the ALJ's decision on that ground.

### 2. RFC and past relevant work

Bruno claims that his assigned RFC limiting him to using a computer "frequently" would prevent him from returning to past relevant work. The Appeals Council Remand Order required clarification of whether or not Bruno could return to his past relevant work given that it required Bruno to use the computer "constantly", and the former RFC limited Bruno to using the computer "frequently". As per the Appeals Council Remand Order, the ALJ clarified his position and maintained that Bruno is capable of performing past relevant work.

On remand, the ALJ found that the record did not support a specific finding limiting Bruno's computer use, but rather, that there were functional limitations that may have led to such a conclusion. Although Bruno testified that his left eye could not "focus quickly enough on the computer", Bruno's ophthalmologist indicated his left eye still had "very good vision with glasses and is healthy overall" as of April 2012. Further, the registry of motor vehicles has not restricted his driving. The VE testified that a hypothetical individual with

Bruno's background, age, education and RFC could return to all of Bruno's past relevant work. That testimony substantially supports the ALJ's determination. See Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 447 (1st Cir. 1991) (noting that where a hypothetical is supported by substantial evidence "the ALJ [is] entitled to rely on the vocation expert's testimony").

Bruno further complains that the ALJ's finding that a person with petitioner's ailments can perform a job requiring near constant sitting and using the computer, is the kind of obduracy that justifies remand with directions that benefits be granted. That contention is unavailing. The ALJ reviewed the record as a whole and carefully considered Bruno's impairments when concluding that Bruno had the RFC to perform "light work". The ALJ further modified "light work" as defined by adding and omitting restrictions to best fit Bruno's RFC. This Court must uphold the ALJ's findings where "a reasonable mind, reviewing the evidence in the record as a whole" is able to find that the ALJ's conclusion is adequately supported by the record. Rodriguez, 647 F.2d at 222. This is true "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). There is adequate support in the record for the ALJ's findings and conclusion that Bruno can return to past relevant work with his assigned RFC.

### 3. Bruno's remaining eyesight and future blindness

Bruno asserts that there are no jobs he can perform without injuring his left eye and that he remains unemployed in order to preserve his remaining eyesight. Further, he contends that the ALJ's decision would require him to "accelerate his blindness". However, the possibility of future impairment is irrelevant when considering Bruno's claim for disability insurance benefits. To be entitled to such benefits, a claimant must demonstrate that his disability existed prior to the expiration of his insured status. See Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Although it is possible that Bruno's visual impairment may worsen in the future, there is substantial evidence that from the alleged onset date to his date last insured, he had very good vision in his healthy left eye. The ALJ correctly considered that time period exclusively when he decided that Bruno's RFC would allow him to return to past relevant work.

### III. Petitioner's Renewed Motion

On October 26, 2017, Petitioner filed a Renewed Motion for Order Reversing the Commissioner's Decision and Remanding with Directions that Benefits be Granted. That motion is redundant and because the Court will deny petitioner's initial motion and allow respondent's motion, petitioner's renewed motion will be denied as moot.

**ORDER**

In accordance with the foregoing,

1) Petitioner's Motion for Order Reversing the Decision of the Commissioner (Docket No. 12) is **DENIED**.

2) Respondent's Motion for Order Affirming the Decision of the Commissioner (Docket No. 21) is **ALLOWED**.

3) Petitioner's Motion for Order Reversing the Decision of the Commissioner and Remanding with Directions that Benefits be Granted (Docket No. 23) is **DENIED**, as moot.

**So ordered.**

                                          /s/ Nathaniel M. Gorton
                                          Nathaniel M. Gorton
                                          United States District Judge

Dated December 15, 2017